UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY B. McGLYNN, )<br>)<br>    *Plaintiff* )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,** )<br>)<br>    *Defendant* ) | No. 1:11-cv-395-DBH |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found that the plaintiff was not disabled prior to December 31, 2007, his date last insured for SSD benefits. The plaintiff seeks reversal and remand on the grounds that the administrative law judge erred in (i) failing to follow certain dictates of Social Security Ruling 83-20 ("SSR 83-20") pertaining to ascertaining his onset date of disability and (ii) deeming his statements and those of his wife not credible with respect to his symptoms prior to January 22, 2009, the date that he was determined to be disabled. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 9) at 5-12. I recommend that the decision be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 22, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2007, Finding 1, Record at 19; that, prior to January 22, 2009, the date that he became disabled, he had medically determinable impairments of right shoulder disorder and anxiety/depression, none of which was a severe impairment alone or in combination, Finding 3, *id*.; that, beginning on January 22, 2009, he had severe impairments of bipolar disorder, panic disorder, and bilateral carpal tunnel syndrome, Finding 4, *id*. at 22; that, since January 22, 2009, the severity of his impairments met the criteria of sections 12.04 and 12.06 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), Finding 5, *id*.; that he was not disabled prior to January 22, 2009, but became disabled on that date and continued to be disabled through the date of the decision, Finding 6, *id*. at 23; and that he was not disabled at any time through December 31, 2007, his date last insured, Finding 7, *id*.[2] The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner. 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the

---

[2] Whereas entitlement to SSD benefits hinges in part on acquisition of insured status, entitlement to SSI benefits does not. *See, e.g., Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999) ("In 1972, Congress added a new social security program to provide 'supplemental security income' (called 'SSI') for 'aged, blind and disabled' persons of limited means regardless of their insured status. This is a social welfare program funded out of general taxpayer revenues. SSI is available even to those who qualify for SSD, but SSD income is considered in determining whether a disabled person qualifies for SSI under the latter's means test.") (citations omitted); *Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) ("To be eligible to receive SSD benefits the plaintiff had to have been disabled on or before her date last insured (March 31, 1995); however, eligibility for SSI benefits is not dependent on insured status."). The administrative law judge effectively found the plaintiff eligible for SSI, but not SSD, benefits.

determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

## I. Discussion

### A. Determination of Onset Date

As the plaintiff points out, *see* Statement of Errors at 5, SSR 83-20 sets forth the commissioner's policy on establishment of the onset date of disability, *see* SSR 83-20, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 49 ("In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.").

The ruling provides, in relevant part:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

*Id*. at 51.

The administrative law judge did not cite SSR 83-20; however, a failure to do so is harmless to the extent that the dictates of the rule are otherwise heeded. *See, e.g., Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 352 (7th Cir. 2005) ("The ALJ did not refer to SSR 83-20

specifically in his decision, but this omission by itself is not reversible error. We must determine whether the ALJ nevertheless properly applied the requisite analysis. Our review of the decision leads us to conclude that he did not."); *Field v. Shalal*[a], No. CIV. 93-289-B, 1994 WL 485781, at *3 (D. N.H. Aug. 30, 1994) ("The ALJ's failure to explicitly rely on SSR 83-20 does not by itself require remand. In this case, however, the ALJ's reasoning also fails to comport with SSR 83-20's substantive requirements.") (citation omitted).

While SSR 83-20 does not mandate in every instance that a medical advisor be called, or additional evidence be sought, courts have construed one or both of those steps to be essential when the record is ambiguous regarding onset date. *See, e.g., Katt v. Astrue*, No. 05-55043, 2007 WL 815418, at *1 (9th Cir. Mar. 14, 2007) ("[A]n ALJ must call a medical expert if there is ambiguity in the record regarding the onset date of a claimant's disability. If the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.") (citation and internal quotation marks omitted); *Blea v. Barnhart*, 466 F.3d 903, 910 (10th Cir. 2006) ("[A] medical advisor need be called only if the medical evidence of onset is ambiguous.") (citation and internal quotation marks omitted); *Briscoe*, 425 F.3d at 353 ("The ALJ acknowledged that the medical evidence was inconclusive. Rather than explore other sources of evidence, as SSR 83-20 requires, the ALJ drew a negative inference at that point."); *May v. Social Sec. Admin. Comm'r*, No. 97-1367, 1997 WL 616196, at *1-*2 (1st Cir. Oct. 7, 1997) (because evidence regarding date on which claimant's mental impairment became severe was ambiguous, SSR 83-20 required administrative law judge to consult medical advisor); *Grebenick v. Chater*, 121 F.3d 1193, 1200-01 (8th Cir. 1997) ("It is important to understand that the issue of whether a medical

4

advisor is required under SSR 83-20 does not turn on whether the ALJ could reasonably have determined that [claimant] was not disabled before September 30, 1982. Rather, when there is no contemporaneous medical documentation, we ask whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status. If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a legitimate medical basis.") (citations and internal quotation marks omitted).

The plaintiff argues that the administrative law judge transgressed SSR 83-20 both in failing to call a medical expert in view of the ambiguity of the record evidence as to his onset date of disability and in improperly dismissing the retrospective opinion of a treating psychiatrist, Jennifer Parent, M.D., that the limitations that she found as of April 6, 2011, "more likely than not persisted since December 30, 2007[,]" the day before the plaintiff's date last insured. Statement of Errors at 5-11; Record at 583.

### i. Ambiguity of Record re: Onset Date

The plaintiff acknowledges that, in *Derosier v. Astrue*, Civil No. 08-274-B-W, 2009 WL 961508 (D. Me. Apr. 7, 2009) (rec. dec., *aff'd* May 5, 2009), this court held:

> It is the medical evidence that must be ambiguous in order to require the services of a medical advisor [pursuant to SSR 83-20]. If there is no medical evidence that would allow the drawing of an inference about the date of onset and the severity of a particular impairment before the date last insured, there is no reason to consult a medical advisor. Nor can a claimant create an ambiguity that requires consultation of a medical advisor merely by offering a retrospective medical opinion that conflicts with all of the contemporaneous medical evidence and the plaintiff's contemporaneous statements to her medical providers.

*Derosier*, 2009 WL 961508, at *6; *see also* Statement of Errors at 5-6.

In *Derosier*, none of the records covering the time period prior to the claimant's date last insured reflected that she complained of any mental health problems or received any treatment for the same. *See Derosier*, 2009 WL 961508, at *5. Her first complaint of depression was made to a treating source more than a year after the expiration of her date last insured. *See id*. The sole *medical evidence* that the claimant presented in support of the onset of her disability prior to her date last insured was the retrospective opinion of an examining psychologist, dated more than seven years after the expiration of her date last insured, that her depression likely was in full flare as of that time. *See id*. at *4-*5. The administrative law judge rejected the opinion, supportably in the court's view, on the basis of its seeming clash with the contemporaneous medical evidence. *See id*.

The plaintiff argues that this case is distinguishable from *Derosier* in that he had a contemporaneous diagnosis of anxiety and a later diagnosis of bipolar disorder, both of which were fully supported by his problematic work history, his testimony and that of his wife, and later medical treatment records. *See* Statement of Errors at 6.[3] He adds that he and his wife provided a reasonable explanation for his lack of treatment: that he had severe problems with isolation and would not attend doctors' appointments without persistent efforts by his wife. *See id*. at 6-7; Record at 55, 64-68. He complains that the administrative law judge failed to factor in this reasonable explanation, in contravention of Social Security Ruling 96-7p ("SSR 96-7p"). *See* Statement of Errors at 7; SSR 96-7p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2011), at 140 (adjudicators "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment

---

[3] The plaintiff, who worked primarily as a cook, testified that he had not worked since 2002 and that, prior thereto, he had worked for a variety of employers, with his longest job lasting three years. *See* Record at 33-39. He testified that one reason he had worked for so many restaurants was that he had problems getting along with others. *See id*. at 44.

6

without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.").

Finally, the plaintiff likens this case to *Godsey v. Astrue*, Civil No. 08-410-P-S, 2009 WL 1873528 (D. Me. June 29, 2009) (rec. dec., *aff'd* July 23, 2009), *see* Statement of Errors at 7-8, in which this court found reversible error in failing to call a medical expert to infer a claimant's onset date of disability pursuant to SSR 83-20 in circumstances in which, despite an absence of any contemporaneous medical records for the period from the claimant's alleged date of onset of disability through his date last insured, *see Godsey*, 2009 WL 1873528, at *4, "[t]he documented severity of [his] heart disease at the time that he finally sought treatment, coupled with [a childhood treating doctor's letter] and the lay testimony of the plaintiff, his wife, and his former employer concerning his condition prior to his date last insured, fairly [could] be said to create an ambiguity concerning the onset date of his disability[,]" *id*. at *5 (footnote omitted).

The instant case is closer to *Derosier* than *Godsey* in that, here, there is contemporaneous medical evidence that the administrative law judge reasonably viewed as cutting against a finding of disability. The plaintiff's wife testified that she managed to persuade her husband to see physicians to address his psychological impairments in 2002 (Dr. Mattia Burtis) and in approximately 2003-04 (Dr. Heidi Decker), but that "the ball got dropped" for a two-year period, from 2005 to 2007, during which she was in college and worked full-time. *See* Record at 64-66. She testified that from 2007 until her husband first saw Dr. Parent in 2009, his behaviors were getting worse, particularly his isolation, and that she eventually persuaded him to see Dr. Parent by handing him an ultimatum that if he did not go to see someone, she would divorce him. *See id*. at 66-67.

The record contains no medical evidence from Dr. Burtis. However, there are progress notes reflecting treatment by Dr. Decker or others within her practice group, Western Maine Family Health Center, on March 31, 2004, April 14, 2004, May 4, 2004, May 19, 2004, August 28, 2006, and February 4, 2008, *see id*. at 291-98, as well as progress notes reflecting treatment by James Ostrander, D.O., of Winthrop Family Practice on August 26, 2008, January 22, 2009, and February 19, 2009, *see id*. at 343-51.

The plaintiff reported to Dr. Decker, upon establishing care with her on April 14, 2004, that he had an informal diagnosis of attention deficit disorder, for which he had been prescribed Zoloft, as well as anxiety and a history of depression. *See id*. at 297. He told Dr. Decker that he had seen a counselor, but his last counseling session was more than 10 years earlier. *See id*. He stated that he still felt grief over the loss of his grandmother two years earlier. *See id*. However, he was noted by Dr. Decker to be "more concerned about nodules that he's had on his legs and back of his neck." *Id*. On examination, Dr. Decker described the plaintiff's affect as "appropriate" and noted that he was "somewhat nervous with some mild anxiety, no agitation appreciated." *Id*. at 296. She diagnosed him with depression/anxiety and prescribed an increase in the dosage of his Zoloft. *See id*. No other Western Maine Family Health Center progress notes disclose that the plaintiff complained about, or received treatment for, any mental health issue except on August 28, 2006, when Dr. Decker noted that, in addition to presenting with a chief complaint of shoulder and knee pain, the plaintiff:

> Also has a problem with anxiety, and is a smoker and really wants to quit. Has not liked the SSRI meds. Has been on Paxil & Zoloft in the past and it really hasn't helped. He's not suicidal. Sometimes he isolates himself for a couple of days. Other days, according to his wife, he can be just as happy and seems to be back to his baseline. Apparently he's been struggling with this problem for [years].

8

*Id*. at 293.  On examination, Dr. Decker noted that the plaintiff's thought process and content were normal, his speech was non-pressured, and she appreciated no anxiety or agitation.  *See id*.  She diagnosed him, *inter alia*, with anxiety, for which she prescribed a trial of Wellbutrin-XL.  *See id*.

When seen by Dr. Ostrander on August 26, 2008, the plaintiff neither complained of, nor was diagnosed or treated for, any mental health impairment.  *See id*. at 349-51.  Dr. Ostrander noted that he was alert and in no acute distress and that his mood was euthymic.  *See id*. at 350.  The plaintiff next returned to see Dr. Ostrander on January 22, 2009, with a chief complaint of issues with anxiety.  *See id*. at 346.  At that time, the plaintiff sought a referral to psychiatry, reporting "a long history of this disorder that includes agoraphobic tendencies as he is only able to go out in public when he is with his wife."  *Id*.  He further told Dr. Ostrander that "[h]is inability to deal with people includes on bad days not even wanting to log on to his computer and go to sites that involve interaction[,]" and "[h]is anxiety is [s]o bad that he is unable to keep a job due to the stress of being in public and dealing with people."  *Id*.  Dr. Ostrander referred the plaintiff to Dr. Parent, a psychiatrist, *see id*. at 347, with whom the plaintiff initiated care on April 14, 2009, *see id*. at 313-20.  At that time, the plaintiff reported to Dr. Parent, *inter alia*, that his anxiety symptoms had been increasing over the prior 10 years and that, on some days, he felt quite down and negative.  *See id*. at 314.[4]

At oral argument, the plaintiff's counsel relied not only on the contemporaneous medical evidence, in particular, Dr. Decker's note of August 28, 2006, but also on Psychiatric Review Technique Forms ("PRTFs") completed by two Disability Determination Services ("DDS")

---

[4] In the period after December 30, 2007, and prior to January 22, 2009, the plaintiff also was seen and treated by an orthopedic specialist, Anthony Mancini, M.D., for right shoulder pain.  *See* Record at 542-49.  No mention is made in these records of any mental health issues, albeit in the context of a specialty orthopedic consultation for shoulder pain.

nonexamining experts, Brenda Sawyer, Ph.D., and David R. Houston, Ph.D., which he contended created an ambiguity by indicating that, for the period from June 2, 2002, through the date of the completion of those forms, the plaintiff suffered from bipolar II and anxiety disorders, imposing moderate functional limitations. *See id*. at 358-70 (Sawyer PRTF), 423-35 (Houston PRTF).

Nonetheless, as counsel for the commissioner responded, both Drs. Sawyer and Houston indicated that they found insufficient evidence to assess the plaintiff's condition prior to his date last insured, *see id*. at 370, 435, and each assessed his mental RFC only as of the date of completion of the forms, *see id*. at 372 ("Current Evaluation"), 446 (same). Thus, as counsel for the commissioner reasoned, the Sawyer and Houston findings cut against, rather than supporting, a finding of ambiguity. *See, e.g, Cummings v. Astrue*, No. 2:10-cv-453-DBH, 2011 WL 4566292, at *4 (D. Me. Sept. 29, 2011) (rec. dec., *aff'd* Oct. 18, 2011) (in determining that claimant had not shown the existence of a severe mental impairment prior to his date last insured, administrative law judge appropriately relied on findings of DDS experts that there was insufficient evidence for that period). In addition, as counsel noted, Dr. Decker's August 2006 note predates the plaintiff's amended alleged disability onset date of December 30, 2007.

Against this backdrop, the administrative law judge supportably found that, while the plaintiff had a history of complaints of depression and anxiety that predated his amended onset date of December 30, 2007, records from that point until January 22, 2009, the date that he was found disabled, did not reveal significant clinical signs, subjective symptoms, work-related limitations, or treatment for depression. *See id*. at 20. This was tantamount to a finding that the contemporaneous evidence created no ambiguity regarding the onset of the plaintiff's disability subsequent to his date last insured. In these circumstances, the retrospective opinion of Dr. Parent could not create an ambiguity regarding onset date. *See, e.g., Derosier*, 2009 WL 961508,

at *6 ("Nor can a claimant create an ambiguity that requires consultation of a medical advisor merely by offering a retrospective medical opinion that conflicts with all of the contemporaneous medical evidence and the plaintiff's contemporaneous statements to her medical providers.").

Nor do I find material error in the administrative law judge's omission, in assessing the contemporaneous medical evidence, to take into account the plaintiff's and his wife's explanations for lack of treatment. Her assessment turned primarily on the lack of any notation of significant signs of mental health impairment or treatment during such times as the plaintiff did seek treatment from December 30, 2007, through January 22, 2009, not on his failure to obtain treatment.

The medical record of evidence, hence, did not create an ambiguity that obligated the administrative law judge to call a medical expert to assist her in inferring the onset date of disability.

### ii. Rejection of Retrospective Parent Opinion

The plaintiff next seeks reversal and remand on the bases that (i) the administrative law judge failed to provide the requisite "good reasons" for rejecting the retrospective opinion of Dr. Parent that the limitations she found as of April 6, 2011, "more likely than not persisted since December 30, 2007[,]" Statement of Errors at 9-11; Record at 583; *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (certain opinions of treating sources merit controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the medical record; adjudicators will "always give good reasons in our notice of determination or decision for the weight [they] give [a claimant's] treating source's opinion") and, (ii) in any event, given the ambiguity of the medical evidence of record, the administrative law judge was required by SSR 83-20 to call a medical

advisor at hearing once she rejected the treating source retrospective opinion, *see* Statement of Errors at 10 (citing *Oliver v. Astrue*, No. 07-157-B-W, 2008 WL 2778229, at *7 (D. Me. June 30, 2008) (rec. dec., *aff'd* July 22, 2008)).

The administrative law judge rejected the retrospective portion of the Parent opinion on two bases: that it was (i) "purely speculative" because Dr. Parent had not begun treating the plaintiff until April 2009, 16 months after the amended alleged onset date of December 30, 2007, and (ii) unsupported by the contemporaneous evidence of record, which revealed no significant clinical signs, subjective symptoms, work-related limitations, or treatment for depression from December 30, 2007, through January 22, 2009. *Id*. at 23.

The plaintiff argues that these were not good reasons for the rejection in that (i) dismissal on the basis that the opinion was "speculative" was error, given that SSR 83-20 recognizes the appropriateness of a retrospective medical opinion, and (ii) the fact that the plaintiff was noted, during some visits to doctors, not to be exhibiting symptoms of mental impairment is outweighed by the "clear evidence" of his longstanding psychiatric problems demonstrated by his work history, his testimony and that of his wife, and subsequent medical records that came into existence once his wife was finally able to persuade him to participate in ongoing treatment. *See* Statement of Errors at 10.

I find no error. The administrative law judge supportably concluded that, when the plaintiff did seek treatment during the period of time prior to January 22, 2009, he did not report, and his treating providers did not record, signs and symptoms of a disabling level of mental impairment. That was a good reason to reject the retrospective opinion. The plaintiff's citation to *Oliver* is unavailing: in that case, the medical evidence of onset date of disability was ambiguous, as a result of which, pursuant to SSR 83-20, the administrative law judge was

12

required to call a medical advisor for help in inferring onset date of disability after he supportably rejected the retrospective opinion of a treating source. *Compare Oliver*, 2008 WL 2778229, at *7.

## B. Credibility Determination

The plaintiff finally challenges the administrative law judge's determination that his statements and those of his wife regarding his condition prior to January 22, 2009, were not credible. *See* Statement of Errors at 11-12. He argues that this determination was based on the same flawed analysis of the medical evidence of record, which gave short shrift to such favorable evidence as the plaintiff's work history and Dr. Parent's retrospective opinion, and that it was error to find the plaintiff and his wife suddenly credible for the period after January 22, 2009, but not for the period prior thereto. *See id*.

As discussed above, I do not find the administrative law judge's analysis of the medical record to have been flawed. In addition, the administrative law judge relied not on a credibility determination, but rather on the medical evidence, in finding the plaintiff disabled as of January 22, 2009. *See* Record at 22-23. Even assuming, *arguendo*, that she found the testimony credible insofar as it pertained to the period after January 22, 2009, but not the period prior thereto, she had good reasons for so doing: that the testimony was supported by the medical evidence with respect to the later period but not the earlier one.[5]

The plaintiff, hence, fails to make a persuasive case for disturbing the administrative law judge's credibility determination. *See Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the

---

[5] The plaintiff argues that, while SSR 96-7p states that an adjudicator may find "all, only some, or none of an individual's allegations to be credible" or find statements credible "to a certain degree[,]" the ruling does not appear to contemplate that an individual could be not credible on day and then credible the next day. Statement of Errors at 12 n.2 (quoting SSR 96-7p at 137). Yet, as the language quoted by the plaintiff illustrates, the ruling does not dictate the ways in which an administrative law judge may find a plaintiff's allegations partially credible.

claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of June, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge